**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| LAWRENCE BROWN, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>EYECARE PARTNERS, LLC, and CEI VISION PARTNERS, LLC,<br><br>Defendants. | Case No. 1:25-cv-00598<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Lawrence Brown ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants EyeCare Partners, LLC ("EyeCare Partners") and CEI Vision Partners, LLC ("CVP") (together with EyeCare Partners, "Defendants") based on personal knowledge, public records, and the investigation of counsel, and alleges as follows:

## INTRODUCTION

1. Between May 24, 2024, and May 27, 2024, an unknown actor gained access to CVP's inadequately protected computer systems. As a result, hundreds, if not thousands, of individuals, including Plaintiff and the Class Members (as further defined below), have had their personal identifiable information ("PII") and private health information ("PHI") (collectively, with PII, "Private Information") exposed (the "Data Breach").

2. CVP is a network of ophthalmology practices based in Ohio. Founded in 2015, CVP's network comprises more than 300 ophthalmologists and over 700 optometrists across 18 states, including Ohio. In 2021, EyeCare Partners acquire CVP. Headquartered in Cincinnati, Ohio, CVP employs over five thousand individuals.

3. EyeCare Partners is the nation's leading provider of clinically integrated eye care.

Their national network of over 300 ophthalmologists and 700 optometrists provide care to patients with a mission to enhance vision, advance eye care and improve lives. Based in St. Loui, Missouri, over 700 EyeCare Partners-affiliated practice locations provide services that span the eye care continuum in 18 states, including Ohio.[1]

4. As part of their business, Defendants obtained and stored the sensitive Private Information of Plaintiff and Class Members.

5. By taking possession and control of Plaintiff's and Class Members' Private Information, Defendants voluntarily assumed a duty to securely store and protect it.

6. On May 26, 2024, CVP discovered that an unknown, unauthorized third party gained temporary access to CVP's computer network. Upon discovery, CVP began an internal investigation. The forensic investigation determined that the unauthorized party accessed certain CVP computer systems between May 24, 2024, and May 27, 2024.[2]

7. On June 10, 2025, CVP determined that the files contained individuals' Private Information. The information accessed by cybercriminals included patients' name, contact information, date of birth, Social Security number, financial account information, driver's license number, clinical information, and/or health plan information.[3]

8. Upon information and belief, CVP sent notice to affected members regarding the Data Breach on or around August 12, 2025, over a year after CVP discovered that an unauthorized

[1] *See* EyeCare Partners LLC, *Cincinnati Eye Institute, an EyeCare Partners Practice, Opens New CEI Retina Clinic at The Landings in Blue Ash* (Dec. 8, 2023), https://www.eyecare-partners.com/press-release/cincinnati-eye-institute-an-eyecare-partners-practice-opens-new-cei-retina-clinic-at-the-landings-in-blue-ash/ (last visited Aug. 18, 2025).

[2] *See* CEI Vision Partners, LLC, *Notice of Data Security Incident*, Cincinnati Eye Institute (Aug. 12, 2025), https://www.cincinnatieye.com/notice-of-data-security-incident/ (last visited Aug. 18, 2025).

[3] *Id.*

third party gained access to its computer network.

9. Due to the Defendants' negligence, cybercriminals obtained everything they needed to commit identity theft and wreak havoc on the financial and Private lives of thousands of individuals.

10. Upon information and belief, Plaintiff Brown's Bank of America and Fifth Third Bank closed out Plaintiff Brown's financial accounts due to suspicious activity which were proximately related to Defendant's Data Breach. Plaintiff Brown is unable to open checking and saving accounts with other banks.

11. Defendants breached their duty to safely secure Plaintiff's and Class Members' Private Information and betrayed the trust of Plaintiff and Class Members by failing to properly safeguard and protect their Private Information and send timely notice of the Data Breach to affected members, thus enabling cybercriminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

12. Defendants' misconduct caused substantial harm and injuries to Plaintiff and Class Members by (i) failing to implement adequate and reasonable measures to protect Plaintiff's and Class Members' Private Information, (ii) failing to timely detect the Data Breach, (iii) failing to take adequate steps to prevent and stop the Data Breach, (iv) failing to disclose the material facts that it did not have adequate security practices in place to safeguard the Private Information, and (v) failing to provide timely and adequate notice of the Data Breach.

13. Due to Defendants' negligence and failures, cyber criminals obtained and now possess everything they need to commit Private identity theft and wreak havoc on the financial and Private lives of thousands of individuals, for decades to come.

14. Plaintiff brings this class action lawsuit to hold Defendant responsible for its

grossly negligent—indeed, reckless—failure to use statutorily required or reasonable industry cybersecurity measures to protect Class Members' Private Information.

15. As a result of the Data Breach, Plaintiff and Class Members have already suffered damages. Certainly, now that their Private Information has been released into the criminal cyber domains, Plaintiff and Class Members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class Members are now forced to deal with the danger of identity thieves possessing and using their Private Information.

16. Additionally, Plaintiff and Class Members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

17. Plaintiff brings this action individually and on behalf of the Class and seeks actual damages and restitution. Plaintiff also seeks injunctive relief, including Defendant-funded long-term credit monitoring and identity-theft protection services, and other remedies as the Court sees necessary and proper.

## THE PARTIES

18. Plaintiff **Lawrence Brown** is a citizen and resident of Ohio where he intends to remain. Mr. Brown is a patient of CVP and provided his Private Information to Defendants in exchange for medical services.

19. Class Members, including Plaintiff, are victims of the Data Breach and upon information and belief are domiciled both in and outside of Ohio.

20. Defendant **CEI Vision Partners, LLC** is a limited liability company formed under the laws of the State of Delaware with its principal place of business in Cincinnati, Ohio.

21. Defendant **Eyecare Partners, LLC** is a limited liability company formed under the

laws of the State of Delaware, with its principal place of business in Ballwin, Missouri. EyeCare Partners acquired CEI Vision Partners, LLC, on or around November 16, 2021, and now conducts substantial business in the area of Cincinnati, Ohio, through that affiliate.[4] EyeCare Partners works through affiliated providers in regional clusters across the United States. Eyecare Partners operates more than thirty (30) centers across 18 states, including Ohio.

## JURISDICTION AND VENUE

22. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of Class Members exceeds 100, and at least one Class Member is a citizen of a state different from Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 367(a), because all claims alleged herein relate to the same case or controversy.

23. CAFA defines "class" as "all of the class members in a class action." 28 U.S.C. § 1332(d)(1)(A). CAFA further defines "class members" as "the persons (named or *unnamed*) who fall within the definition of the *proposed* or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D) (emphasis added).

24. Class Members are victims of the Data Breach and, upon information and belief, are domiciled across the United States. By having at least one "member of a class of Plaintiff [who] is a citizen of a State different from any defendant," diversity jurisdiction is conferred here, since the amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(2) (establishing diversity jurisdiction where the amount in controversy exceeds $5,000,000 and where "*any* member of a [proposed] class of Plaintiff is a citizen of a State different from *any* defendant") (emphasis added).

---

[4] *See* EyeCare Partners, LLC, *EyeCare Partners Completes Acquisition of CEI Vision Partners* (Nov. 16, 2021), https://www.eyecare-partners.com/press-release/eyecare-partners-completes-acquisition-of-cei-vision-partners/ (last visited Aug. 18, 2025).

25. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in this District, maintains a principal place of business in this District, and have sufficient minimum contacts this State and District.

26. Venue is proper as to Defendants in this District under 28 U.S.C. § 1391(a)(1) because Defendants' principal place of business is in this District and therefore reside in this District pursuant to 28 U.S.C. § 1391(c)(2). Venue is further proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Class's claims also occurred in this District.

## FACTUAL ALLEGATIONS

### *The Data Breach and Defendants' Belated Notice*

27. On May 26, 2024, CVP discovered that an unknown, unauthorized third party gained temporary access to CVP's computer network. Upon discovery, CVP began an internal investigation. The forensic investigation determined that the unauthorized party accessed certain CVP computer systems between May 24, 2024, and May 27, 2024.[5]

28. Based on a subsequent forensic investigation, CVP determined that cybercriminals accessed its inadequately secured systems and thereby gained undetected access to certain data files. On June 10, 2025, the investigation determined that, through this infiltration, cybercriminals accessed and acquired the sensitive Private Information of thousands of individuals.[6]

29. Defendants posted Notice of Data Security Incident on their website and gave a brief summation of the Data Breach to affected individuals like Plaintiff and Class Members.[7]

30. The Private Information accessed by cybercriminals included patients' name, contact information, date of birth, Social Security number, financial account information, driver's

---

[5] *See* CVP's *Notice of Data Security Incident*, *supra* at n.2, https://www.cincinnatieye.com/notice-of-data-security-incident/ (last visited August 18, 2025)

[6] *Id.*

[7] *Id.*

license number, clinical information, and/or health plan information.[8]

31. CVP sent notice to affected members regarding the Data Breach on or around August 12, 2025, over a year after CVP discovered that an unauthorized third party gained access to its computer network.

32. Despite the sensitivity of the Private Information that was exposed, and the attendant consequences to affected individuals as a result of the exposure, Defendants failed to disclose the Data Breach for over a year from the time of the Breach. This inexplicable delay further exacerbated the harms to Plaintiff and Class Members.

33. Upon information and belief, the unauthorized third-party cybercriminal gained access to the Private Information, exfiltrated the Private Information from Defendants' network, and have engaged in (and will continue to engage in) misuse of the Private Information, including marketing and selling Plaintiff's and Class Members' Private Information on the dark web.

34. Accordingly, Defendants had obligations created by industry standards, common law, statutory law, and their own assurances and representations to keep Plaintiff and Class Members' Private Information confidential and to protect such Private Information from unauthorized access.

35. Nevertheless, Defendants failed to spend sufficient resources on encrypting sensitive Private data, preventing external access, detecting outside infiltration, and training their employees to identify hacking threats and defend against them.

36. Defendants' infiltrated network was not protected by sufficient multi-layer data security technologies or effective firewalls.

37. Further, the fact that PII/PHI was accessed and/or accessible in the Data Breach

[8] *Id.*

demonstrates that the Private Information contained in the Defendants' network was not encrypted. Had the information been properly encrypted, the data thieves would have only had access to unintelligible data.

38. Plaintiff and Class Members entrusted Defendants with sensitive and confidential information, including their Private Information, which includes information (such as Social Security numbers) that are static, do not change, and can be used to commit many financial crimes.

39. Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

40. According to the U.S. Government Accountability Office ("GAO") in a 2007 Report to Congress ("the GAO Report"), Private Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[9]

41. In addition, the severity of the consequences of a compromised Social Security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory groups can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> Scammers use your Social Security number (SSN) to get other Personal information about you. They can use your SSN and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your SSN until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought.[10]

---

[9] GAO, *Report to Congressional Requesters: Private Information* (June 4, 2007), https://www.gao.gov/assets/gao-07-737.pdf (last visited Aug. 18, 2025).

[10] U.S. Soc. Security Admin., *Identity Theft and Your Social Security Number* (Oct. 2024), 1, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Aug. 18, 2025).

This is exacerbated by the fact that the problems arising from a compromised Social Security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> You should know that other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So, using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[11]

42. A particularly troublesome example of this effect is the development of "Fullz" packages. A "Fullz" package is a dossier of information that cybercriminals and other unauthorized parties can assemble by cross-referencing the Private Information compromised in a given data breach to publicly available data or data compromised in other data breaches. Automated programs can and are routinely used to create these dossiers and they typically represent an alarmingly accurate and complete profile of a given individual.

43. Therefore, through the use of these "Fullz" packages, stolen Private Information from this Data Breach can be easily linked to Plaintiff's and the proposed Class Members' phone numbers, email addresses, and other sources and identifiers. Thus, even if certain information such as emails, phone numbers, or credit card or financial accounts were not compromised in this Data Breach, criminals can easily create a Fullz package to use for identity theft, to commit fraudulent account activity on Plaintiff's and the Class's financial accounts, or to sell for profit.

44. Upon information and belief, this has already transpired (and will continue to transpire) for Plaintiff and the Class.

---

[11] *Id.* at 6.

45. Moreover, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

46. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

47. Because Defendants had a duty to protect Plaintiff's and Class Members' Private Information, Defendants should have known through readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

48. Defendants breached their obligations to Plaintiff and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data. Defendants' unlawful conduct include, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. Failing to adequately protect their patients' Private Information;

c. Failing to properly monitor their own data security systems for existing intrusions;

d. Failing to ensure that their vendors with access to its computer systems and

data employed reasonable security procedures;

e. Failing to train their employees in the proper handling of emails containing Private Information and maintain adequate email security practices;

f. Failing to ensure the confidentiality and integrity of electronic Private Information they created, received, maintained, and/or transmitted;

g. Failing to implement technical policies and procedures for electronic information systems that maintain electronic Private Information to allow access only to those persons or software programs that have been granted access rights;

h. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations;

i. Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports;

j. Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic Private Information;

k. Failing to protect against reasonably anticipated uses or disclosures of electronic PII that are not permitted under the privacy rules;

l. Failing to train all members of their workforces effectively on the policies and procedures regarding PII as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of Private Information;

m. Failing to render the electronic Private Information they maintained unusable,

unreadable, or indecipherable to unauthorized individuals, as they had not encrypted the electronic Private Information;

n. Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

o. Failing to adhere to industry standards for cybersecurity; and

p. Otherwise breaching their duties and obligations to protect Plaintiff's and Class Members' Private Information.

49. Defendants negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access Defendants' computer network and systems which contained unsecured and unencrypted Private Information.

50. Accordingly, Plaintiff and Class Members now face an increased risk of fraud and identity theft. In addition, Plaintiff and the Class Members also lost the benefit of the bargain they made with Defendants.

51. The stolen Private Information at issue has great value to the hackers, due to the large number of individuals affected and the fact the sensitive information that was part of the data that was compromised.

***Plaintiff Lawrence Brown's Experiences and Harms***

52. Plaintiff entrusted his sensitive Private Information to Defendants in exchange for medical services and with the reasonable expectation that Defendants would utilize industry-standard data security measures to secure his Private Information.

53. Plaintiff is very careful about sharing his sensitive Private Information. To the best of Plaintiff's knowledge, he has never before had his Private Information exposed in any other data breach.

54. Plaintiff stores any documents containing his Private Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive PII or PHI over the internet or any other unsecured source.

55. Because of the Data Breach, Plaintiff Brown's Private Information is now in the hands of cybercriminals.

56. Plaintiff has suffered actual injury from the exposure and theft of his Private Information—which violates his right to privacy.

57. Subsequent to Defendants' Data Breach, upon information and belief, Plaintiff Brown's bank, Bank of America, closed off Plaintiff Brown's (i) debit card; (ii) credit card; (iii) two (2) savings accounts; and (iv) checking account due to suspicious activity. Upon information and belief, the suspicious activity reported on Plaintiff Brown's Bank of America accounts was a proximate result of a third-party obtaining Plaintiff Brown's Private Information from Defendants' inadequately secured systems.

58. On or around March of 2025, Plaintiff Brown's bank, Fifth Third Bank, closed Plaintiff Brown's debit card due to suspicious activities. Upon information and belief, the suspicious activity reported on Plaintiff Brown's Fifth Third Bank account was a proximate result of a third-party obtaining Plaintiff Brown's Private Information from Defendants' inadequately secured systems.

59. Subsequent to Defendants' Data Breach and Plaintiff Brown's banks closing his accounts, Plaintiff Brown has been unable to re-open his accounts with Bank of America and Fifth Third Bank. Furthermore, Plaintiff Brown reports that he is unable to open financial accounts with other bank institutions.

60. As a result of the Data Breach, Plaintiff has incurred injury in fact by having his

banks close out his financial accounts due to suspicious activities that are proximately related to Defendants' breach incident.

61. As a result of the Data Breach, which exposed highly valuable information such as his Social Security number, Plaintiff is now imminently at risk of crippling future identity theft and fraud.

62. Since the Data Breach, Plaintiff has also experienced a notable increase in the number of spam calls and spam emails.

63. As a result of the Data Breach, Plaintiff has had no choice but to spend numerous hours attempting to mitigate the harms caused by the Data Breach and addressing the future consequences of the Breach. Among other things, Plaintiff has already expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including researching facts about the Data Breach; thoroughly reviewing account statements and other information; and taking other protective and ameliorative steps in response to the Data Breach. This is time that Plaintiff will never get back and would have devoted to other matters, including work and recreation.

64. Defendants' Notice of Data Security Incident, posted on their company website, advised affected individuals, like Plaintiff and Class Members, that "if individuals detect any suspicious activity on an account, they should promptly notify the financial institution or company with which the account is maintained and report any fraudulent activity or any suspected incidents of identity theft to proper law enforcement authorities, including the police and their state's attorney general."[12] In addition, the Defendants' Notice of Data Security Incident listed several

[12] *See* CVP's *Notice of Data Security Incident*, *supra* at n.2, https://www.cincinnatieye.com/notice-of-data-security-incident/ (last visited August 18, 2025).

"steps" that victims of the Data Breach should take to help protect themselves including, enrolling in credit monitoring, placing fraud alerts with credit reporting bureaus, and placing security freezes on credit reports.[13]

65. As a result of the Data Breach, Plaintiff has experienced stress, anxiety, and concern due to the loss of his financial accounts and privacy and concern over the impact of cybercriminals accessing his Private Information. Plaintiff fears that criminals will use his information to commit identity theft.

66. Plaintiff anticipates spending considerable time and money on an ongoing basis to remedy the harms caused by the Data Breach.

67. Plaintiff has also suffered injury directly and proximately caused by the Data Breach, including: (i) theft of Plaintiff's valuable Private Information; (ii) the imminent and certainly impending injury flowing from fraud and identity theft posed by Plaintiff Brown's Private Information being placed in the hands of cybercriminals; (iii) damages to and/or diminution in value of Plaintiff Brown's Private Information that was entrusted to Defendants; (iv) damages unjustly retained by Defendants at the cost to Plaintiff, including the difference in value between what Plaintiff should have received from Defendants and Defendants' defective and deficient performance of that obligation by failing to provide reasonable and adequate data security to protect Plaintiff Brown's Private Information; (v) Plaintiff Brown's banks closing his financial accounts due to suspicious activities; and (vi) continued risk to Plaintiff Brown's Private Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendants.

---

[13] *Id.*

***Defendants had an Obligation to Protect Private Information under the Law and the Applicable Standard of Care***

68. Defendants are prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive Private information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

69. Defendants are further required by various states' laws and regulations to protect Plaintiff's and Class Members' Private Information.

70. Defendants owed a duty to Plaintiff and the Class to design, maintain, and test their computer and application systems to ensure that the Private Information in their possession was adequately secured and protected.

71. Defendants owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Private Information in their possession, including adequately training their employees (and others who accessed Private Information within their computer systems) on how to adequately protect Private Information.

72. Defendants owed a duty to Plaintiff and the Class to implement processes that would detect a breach on their systems in a timely manner.

73. Defendants owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

74. Defendants owed a duty to Plaintiff and the Class to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust Private

Information with Defendants.

75. Defendants owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

76. Defendants owed a duty of care to Plaintiff and the Class because they was a foreseeable victim of a data breach.

***Defendants were on Notice of Cyber Attack Threats and of the Inadequacy of their Data Security***

77. Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it. The general public can tell you the names of some of the biggest cybersecurity breaches: Target,[14] Yahoo,[15] Marriott International,[16] Chipotle, Chili's, Arby's,[17] and others.[18]

78. Defendants should have been aware, and indeed actually were aware, that they were at risk of a data breach that could expose the Private Information they collected and maintained.

79. By acquiring CVP, Defendant EyeCare Partners had a duty and obligation to ensure that CVP had adequate security measures to protect patients' Private Information contained within

---

[14] Michael Kassner, *Anatomy of the Target data breach: Missed opportunities and lessons learned*, ZDNet (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/ (last visited Aug. 18, 2025).

[15] Martyn Williams, *Inside the Russian hack of Yahoo: How they did it*, CSO (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html (last visited Aug. 18, 2025).

[16] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, HashedOut by The SSL Store (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/ (last visited Aug. 18, 2025).

[17] Alfred Ng, *FBI nabs alleged hackers in theft of 15M credit cards from Mhipotle, others*, CNET (Aug. 1, 2018), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b (last visited Aug. 18, 2025).

[18] *See, e.g.*, Michael Hill, et al., *The 18 biggest data breaches of the 21st century*, CSO (Sept. 12, 2024), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html (last visited Aug. 18, 2025).

their systems. By negligently failing to ensure that CVP had adequate security measures to protect Plaintiff's and Class Members' Private Information from an unauthorized third-party, Defendant EyeCare Partners breached its duty of care to Plaintiff and Class Members, and its conduct placed the Private Information of Plaintiff and Class Members at imminent risk of being misused, or which has already been misused by unauthorized third parties.

80. Defendants were also on notice of the importance of data encryption of Private Information. Defendants knew they kept Private Information in their systems and yet it appears Defendants did not encrypt these systems or the information contained within them.

***Cyber Criminals Will Use Plaintiff's and Class Members' Private Information to Defraud Them***

81. Plaintiff and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class Members and to profit off their misfortune.

82. Each year, identity theft causes over $10 billion dollars in losses to victims in the United States.[19] For example, with the Private Information stolen in the Data Breach, identity thieves can open financial accounts, apply for credit, collect government benefits, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[20] These criminal activities have and will result in

---

[19] Ins. Info. Inst., *Facts + Statistics: Identity Theft and Cybercrime*, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing the FBI's *Internet Crime Report 2023*) (last visited Aug. 18, 2025).

[20] John Egan, *What Should I Do if My Driver's License Number Is Stolen?*, Experian (June 13, 2024), https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/ (last visited Aug. 18, 2025).

devastating financial and personal losses to Plaintiff and Class Members.

83. Private Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade it on the cyber black-market for years.[21]

84. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

85. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personal identifiable information and Social Security numbers are worth more than 10x on the black market."[22]

86. This was a financially motivated Data Breach, as apparent from the discovery of the cyber criminals seeking to profit off the sale of Plaintiff's and the Class Members' Private Information on the dark web. The Private Information exposed in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein.

87. These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personal identifiable information, they will use it.[23]

---

[21] GAO Report, *supra* at n.9, https://www.gao.gov/products/gao-07-737.

[22] Tim Greene, *Anthem Hack: Private data stolen Sells for 10x price of stolen credit card numbers*, Network World (Feb. 6, 2015), https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Aug. 18, 2025).

[23] Ari Lazarus, *How fast will identity thieves use stolen info?*, Military Consumer (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info (last visited Aug. 18, 2025).

88. Hackers may not use the accessed information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[24]

89. As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[25]

90. With this Data Breach, identity thieves have already started to prey on the victims, and one can reasonably anticipate this will continue.

91. Victims of the Data Breach, like Plaintiff and other Class Members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[26]

92. In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have suffered, and have been placed at an imminent, immediate, and continuing increased risk of suffering, harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for

---

[24] GAO Report, *supra* at n.9, https://www.gao.gov/products/gao-07-737.

[25] FTC, *Guide for Assisting Identity Theft Victims*, at 4 (Sept. 2013), https://sedm.org/Forms/09-Procs/pdf-0119-guide-assisting-id-theft-victims.pdf (last visited Aug. 18, 2025).

[26] *Id.*

unauthorized activity for years to come.

93. Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

a. Trespass, damage to, and theft of their personal property including Private Information;

b. Improper disclosure of their Private Information;

c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals and having been already misused;

d. The imminent and certainly impending risk of having their Private Information used against them by spam callers to defraud them;

e. Damages flowing from Defendants' untimely and inadequate notification of the data breach;

f. Loss of privacy suffered as a result of the Data Breach;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h. Ascertainable losses in the form of deprivation of the value of individuals' Private information for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their Private Information; and

k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

94. Moreover, Plaintiff and Class Members have an interest in ensuring that their information, which remains in the possession of Defendants, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendants have shown themselves to be incapable of protecting Plaintiff's and Class Members' Private Information.

95. Plaintiff and Class Members are desperately trying to mitigate the damage that Defendants have caused them but, given the Private Information Defendants made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Private Information, Plaintiff and all Class Members will need to have identity theft monitoring protection for the rest of their lives.

96. None of this should have happened. The Data Breach was preventable.

***Defendants Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Private Information***

97. Data breaches are preventable.[27] As Lucy Thompson wrote in the *Data Breach and Encryption Handbook*, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[28] she added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[29]

---

[27] Lucy L. Thompson, *Despite the Alarming Trends, Data Breaches Are Preventable*, *in Data Breach and Encryption Handbook* (Lucy Thompson, ed., 2012).

[28] *Id.* at 17.

[29] *Id.* at 28.

98. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[30]

99. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

100. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[31]

101. The FTC further recommends that companies not maintain Personal Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented

[30] *Id.*

[31] FTC, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Aug. 18, 2025).

reasonable security measures.

102. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

103. Defendants failed to properly implement basic data security practices, including those set forth by the FTC.

104. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

105. Upon information and belief, CVP and EyeCare Partners failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

106. Defendants were entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of Plaintiff's and Class Members' Private Information.

107. Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendants' failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff's and Class Members' Private Information.

108. Defendants were at all times fully aware of their obligation to protect the Private Information of Plaintiff and Class Members. Defendants were also aware of the significant repercussions that would result from their failure to do so.

109. Defendants maintained the Private Information in a reckless manner. In particular, the Private Information was maintained and/or exchanged, unencrypted, in Defendants' systems and were maintained in a condition vulnerable to cyberattacks.

110. Defendants knew, or reasonably should have known, of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiff's and Class Members' Private Information was stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach.

111. The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendants, and thus Defendants were on notice that failing to take necessary steps to secure Plaintiff's and Class Members' Private Information from those risks left that information in a dangerous condition.

112. Defendants disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their network systems were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' Private Information; (iii) failing to take

standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## CLASS ACTION ALLEGATIONS

113. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

114. Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of the Class, defined as follows:

> **All persons residing in the United States whose Private Information was compromised as a result of the Data Breach.**

115. Plaintiff reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

116. The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

117. **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable.

118. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendants' uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Private Information compromised in the same way by the same conduct of Defendants.

119. **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class that Plaintiff seeks to represent; Plaintiff has retained competent counsel and highly experienced in data breach class action litigation; and

Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

120. **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

121. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a. Whether Defendants engaged in the wrongful conduct alleged herein;

b. Whether Defendants failed to adequately safeguard Plaintiff's and the Class's Private Information;

c. Whether Defendants' computer systems and data security practices used to protect Plaintiff's and Class Members' Private Information violated the FTC Act, and/or state laws and/or Defendants' other duties herein;

d. Whether Defendants owed a duty to Plaintiff and the Class to adequately protect their Private Information, and whether they breached this duty;

e. Whether Defendants knew or should have known that their computer and network security systems were vulnerable to a data breach;

f. Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach;

g. Whether Defendants breached contractual duties owed to Plaintiff and the Class to use reasonable care in protecting their Private Information;

h. Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i. Whether Defendants continue to breach duties to Plaintiff and the Class;

j. Whether Plaintiff and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

k. Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

l. Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class;

m. Whether Defendants' actions alleged herein constitute gross negligence; and

n. Whether Plaintiff and Class Members are entitled to punitive damages.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

122. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

123. Defendants solicited, gathered, and stored the Private Information of Plaintiff and the Class as part of the operation of their business and in order to gain revenues.

124. Upon accepting and storing the Private Information of Plaintiff and Class Members, Defendants undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

125. Defendants had full knowledge of the sensitivity of the Private Information, the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security.

126. Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices on the part of Defendants. Plaintiff and the Class Members had no ability to protect their Private Information that was in Defendants' possession. As such, a special relationship existed between Defendants and Plaintiff and the Class.

127. Defendants were well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal sensitive personal information.

128. Defendants owed Plaintiff and the Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing private information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

129. Defendants' duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

130. Defendants had duties to protect and safeguard the Private Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendant owed Plaintiff and the Class include:

a. To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b. To protect Plaintiff's and Class Members' Private Information in their possession by using reasonable and adequate security procedures and systems;

c. To implement processes to quickly detect a data breach, security incident, or intrusion involving its systems, networks and servers; and

d. To promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

131. Defendants' common law duties to Plaintiff and the Class are independent from and untethered by any contract.

132. Only Defendants were in a position to ensure that their systems and protocols were sufficient to protect the Private Information that Plaintiff and the Class had entrusted to them.

133. Defendants breached their duty of care by failing to adequately protect Plaintiff's and Class Members' Private Information. Defendants breached their duties by, among other things:

a. Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Private Information in their possession;

b. Failing to protect the Private Information in their possession by using reasonable and adequate security procedures and systems;

c. Failing to adequately and properly audit, test, and train their employees to avoid phishing emails;

d. Failing to use adequate email security systems, including industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails;

e. Failing to adequately and properly audit, test, and train their employees regarding how to properly and securely transmit and store Private Information;

f. Failing to adequately train their employees to not store Private Information longer than absolutely necessary for the specific purpose that it was sent or received;

g. Failing to consistently enforce security policies aimed at protecting

Plaintiff's and the Class's Private Information;

h. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

i. Failing to promptly notify Plaintiff and Class Members of the Data Breach that affected their Private Information.

134. Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

135. By acquiring CVP, Defendant EyeCare Partners had an obligation to ensure the CVP's computer systems and security network adequately protected Plaintiff and Class Member's Private Information from unauthorized parties.

136. By obtaining and maintaining Plaintiff's and Class Member's Private Information in the course of their regular business, CVP had a duty to ensure that its systems provided adequate security to prevent unauthorized access by third parties.

137. As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

138. Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendants' possession and control.

139. Further, through their failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendants prevented Plaintiff and Class Members from

taking meaningful, proactive steps toward securing their Private Information and mitigating damages.

140. Defendants negligently and/or recklessly waited over a year after they discovered the Data Breach to notify affected individuals, like Plaintiff and Class Members, that their Private Information was accessed by an unauthorized third party.

141. As a result of the Data Breach, Plaintiff and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to fraudulent activity, closely monitoring bank account activity, and examining credit reports and statements sent from providers and their insurance companies.

142. Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

143. The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

144. In addition to their duties under common law, Defendants had additional duties imposed by statute and regulations, including the duties under the FTC Act. The harms which occurred as a result of Defendants' failure to observe these duties, including the loss of privacy, lost time and expense, and significant risk of identity theft are the types of harm that these statutes and regulations intended to prevent.

145. Defendants violated these statutes when they engaged in the actions and omissions alleged herein, and Plaintiff's and Class Members' injuries were a direct and proximate result of Defendants' violations of these statutes. Plaintiff is therefore also entitled to the evidentiary presumptions for negligence *per se*.

146. Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendants owed a duty to Plaintiff

and the Class to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and the Class.

147. The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also formed part of the basis of Defendants' duties in this regard.

148. Defendants gathered and stored the Private Information of Plaintiff and the Class as part of their business, which affect commerce.

149. Defendants violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

150. Defendants breached their duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class Members' Private Information, and by failing to provide prompt and specific notice without reasonable delay.

151. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

152. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

153. Defendants breached their duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Private Information.

154. Defendants breached their duties to Plaintiff and the Class by unreasonably

delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

155. As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

156. The injury and harm that Plaintiff and Class Members suffered (as alleged above) was the direct and proximate result of Defendants' negligence.

157. Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

158. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

159. Plaintiff and Class Members were required to provide Defendants with their Private Information in order to receive medical services.

160. Defendants solicited and invited Class Members to provide their Private Information as part of Defendants' regular business practices. Plaintiff and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

161. Through their course of conduct, Defendants, Plaintiff, and Class Members entered into implied contracts in which Defendants agreed to comply with their statutory and common law duties to protect their Private Information, including to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Private Information and to timely notify them in the event of a Data Breach.

162. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and

regulations and were consistent with industry standards.

163. Based on Defendants' representations, legal obligations, and acceptance of Plaintiff's and the Class Members' Private Information, Defendants had an implied duty to safeguard Plaintiff's and Class Member's Private Information through the use of reasonable industry standards.

164. Defendants breached their implied contracts by failing to safeguard Plaintiff's and Class Members' Private Information, including through industry standard technologies like encryption, and failing to provide Class Members with timely and accurate notice of the Data Breach. Indeed, it took Defendants over a year to warn Plaintiff and Class Member of their imminent risk of identity theft. Defendants also failed to adequately notify Plaintiff and the Class Members exactly what Private Information was exposed by using vague language such as "limited clinical information," leaving them unsure as to the extent of the information that was compromised.

165. As a direct and proximate result of Defendants' breach of implied contract, Plaintiff and the Class Members have suffered damages, including foreseeable consequential damages that Defendants knew about when they requested Plaintiff's and the Class Members' Private Information.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff are proper representatives of the Class requested herein;

b. A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including nominal damages, actual damages, attorneys' fees, expenses, costs, and such

other and further relief as is just and proper.

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein, including, but not limited to providing Plaintiff and Class Members with adequate credit monitoring and identity theft restoration services for the rest of their lives.

d. An order requiring Defendants to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

e. A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f. An award of such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable herein.

DATED: August 19, 2025

*/s/ Terence R. Coates*
Terence R. Coates (0085579)
Spencer D. Campbell (0103001)
MARKOVITS, STOCK & DEMARCO, LLC
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*
*scampbell@msdlegal.com*

William B. Federman*
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

*Attorneys for Plaintiff and the Proposed Class*

* Motion for admission *pro hac vice* forthcoming